UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-20194-GAYLES

LYNN McCULLOUGH and
WILLIAM McCULLOUGH,
                        Plaintiffs,

              v.

ROYAL CARIBBEAN CRUISES, LTD., et al.,
                        Defendants,
_____/

## ORDER

**THIS CAUSE** comes before the Court on the Joint Motion to Dismiss Second Amended Complaint [ECF No. 125] filed by Defendants Royal Caribbean Cruises, Ltd. ("Royal Caribbean"); Rain Forest Adventures (Holdings) Ltd. ("RF Holdings"); Elite Shore Excursions Foundation ("Elite Shore"); Rain Forest Sky Rides, Ltd. ("Rain Forest Sky Rides"); Rain Forest Tram, Ltd. ("RF Tram"); Canopy Enterprises, Inc. ("Canopy"); ENT-Consulting, Inc. ("ENT"); EMJO Investments Ltd. ("EMJO"); AP Electrical Service, LLC ("AP Electrical"); Harald Joachim von der Goltz; John Dalton; and Andrew Pierce,[1] as well as the Motion to Strike Supporting Affidavits [ECF No. 243] filed by Defendants EMJO, AP Electrical, Pierce, and Dalton. The Court has carefully considered the parties' briefs, the record in this case, and the applicable law and is otherwise fully advised in the premises.

## I.      BACKGROUND

According to the allegations in the Second Amended Complaint, Plaintiff William

---

[1]   On March 17, 2016, upon stipulation of the parties, the Court stayed this action as to the following Defendants: Rainforest Adventures; Rain Forest Adventures; Rain Forest Adventures St. Lucia; Rain Forest Sky Rides d/b/a Elite Shore Excursions; Elite Shore Excursions; Elite Shore Excursions d/b/a St. Lucia Sky Rides, Ltd.; St. Lucia Sky Rides, Ltd.; Raid Forest Sky Rides Ltd.; Rain Forest Sky Rides St. Lucia, Ltd.; Convi Ltda.; Panama Excursiones S.A.; Telefericos RFAT de Costa Rica S.A.; and Dosel S.A. [ECF No. 32].

McCullough earned a Royal Caribbean cruise for himself and his wife, Plaintiff Lynn McCullough, through his work as an insurance agent. Second Am. Compl. ¶ 42. He then purchased excursion tickets by going to Royal Caribbean's website and using an access code. *Id.* ¶ 43. One of the excursions the McCulloughs purchased was the Adrena-Line zip line course. *Id.* Mr. McCullough paid Royal Caribbean for two tickets on the tour for July 15, 2015, and received a receipt from Royal Caribbean for the purchase. *Id.* ¶ 44. On July 11, 2015, the McCulloughs boarded the Royal Caribbean *Adventure of the Seas* vessel in San Juan, Puerto Rico, for a seven-day pleasure cruise. *Id.* ¶ 46. The McCulloughs received their tickets for the Adrena-Line tour from Royal Caribbean while on board the ship. *Id.* ¶ 47.

On July 15th, the *Adventure of the Seas* docked in St. Lucia and the McCulloughs were transported to the park in Babonneau, St. Lucia, where the excursion would take place (the "Park"). *Id.* ¶ 48. At the Park, the McCulloughs were told that there would be two "surprises" on the Adrena-Line, but were not told that rappelling would be one of the "surprises." *Id.* ¶ 50. As they progressed through the tour, the McCulloughs arrived at Platform 15, whereupon they were informed for the first time that they would need to rappel down to the next platform. *Id.* ¶ 51. The rappelling portion was set up as a two-line system: a "live rope" (so called because the rope moves with the participant as the participant rappels down) with a figure eight attached to a sling fastened to a tree, and a "dead rope" (so called because the rope ***does not*** move with the participant) anchored to a boom arm with a figure eight attached to the participant's harness. *Id.* ¶ 52. The rappelling station did not have any "fail safe" method to ensure that, in the event of human error, such as in connecting, securing, or holding the ropes, a participant's fall would be stopped or slowed before hitting the ground. *Id.* The station also had nothing to soften the impact of landing on rock below. *Id.*

In participating in this activity, Mrs. McCullough did everything she was asked or told to do by the Park guide and the guides at Platform 15. *Id.* ¶ 55. When Mrs. McCullough stepped off

the platform, however, she was not properly secured, braked, stopped, caught, or otherwise slowed down in any manner and was allowed to free fall to the ground from the deck of the platform (a distance of nearly fifty feet) by the employees stationed on Platform 15 and on the ground below Platform 15. *Id.* ¶ 56. The Defendants' joint investigation concluded that there was a breakdown in communication between the sending guide and receiving guide at Platform 15, which resulted in Mrs. McCullough being sent down without someone being prepared to receive her. *Id.* ¶ 57. The guides also deviated from proper protocol and Park policy in not using the two-line system; rather, they had agreed in advance to use only the dead rope for smaller or lighter participants in order to save time on a busy "cruise day." *Id.* ¶¶ 49, 57. The Park's manager was aware of this change in the procedure and did not object. *Id.* ¶ 58. The Defendants' joint investigation also concluded that emergency medical technicians were not on site as advertised by the Park in its marketing bro-chures. *Id.* ¶ 59. Mrs. McCullough was moved on a backboard to the Park's "EMT Room" and ultimately transported to a local hospital by ambulance. *Id.*

Mr. McCullough was standing on Platform 15 and observed his wife's fall. *Id.* ¶ 60. Because the Park did not have proper emergency equipment and personnel, he slipped and twisted his left knee. *Id.* Mr. McCullough alleges that he "suffered severe emotional and psychological distress, with physical manifestations, as a result of this experience." *Id.* ¶ 60. As for Mrs. McCullough, she sustained a broken neck, destruction of her disc at C-7 that necessitated the fusion of C-6 to T-1, a punctured lung, a broken right leg, a shattered right heel bone, a broken left ankle, a shattered left heel bone, damage to her teeth and jaw, damage to her arms and shoulders, and paralysis from the chest (T-3 level) down. *Id.* ¶ 61.

The McCulloughs filed a Complaint in this Court on January 15, 2016 [ECF No. 1], and amended that Complaint on February 16, and July 14, 2016 [ECF Nos. 12 & 71]. In the Second Amended Complaint, they sue Royal Caribbean and a complex network of other parties and enti-

ties, which the McCulloughs collectively refer to as the "Rain Forest Defendants"—Defendants Elite Shore, RF Holdings, Rain Forest Sky Rides, RF Tram, Canopy Enterprises, ENT, and von der Goltz.[2] A brief introduction to these parties is beneficial.

Defendant Elite Shore is a Panamanian company that has allegedly agreed to act as the agent for Defendant Rain Forest Sky Rides (a St. Lucia company) in negotiating agreements with cruise companies and obtaining the required insurance. Second Am. Compl. ¶ 27(a). At all relevant times, Elite Shore was entirely owned by Defendant RF Holdings (a British Virgin Islands company), which itself has been owned in significant part by Defendant EMJO (also a British Virgin Islands company). *Id.* ¶¶ 27(b), 27(j). Rain Forest Sky Rides has been nearly entirely owned by Defendant RF Tram, a Hong Kong company. *Id.* ¶ 27(g). RF Tram, with Defendant von der Goltz signing on its behalf, has retained Defendant ENT to maintain an office in Miami, Florida, and provide it with service in the United States, including managing the relationship with the cruise ship industry. *Id.* ¶ 27(h). RF Holdings and RF Tram have the same three directors, including von der Goltz. Two of those directors, including von der Goltz, also serve as directors of Defendant Canopy. *Id.* ¶ 27(o). Defendant Dalton was a professional engineer who provided services for and/or was directly employed by the Rain Forest Defendants. *Id.* ¶ 7. And Defendant Pierce—the principal of Defendant AP Electrical—was a park inspector who also provided services for and was directly employed by the Rain Forest Defendants. *Id.* ¶ 8.

The McCulloughs seek compensatory, punitive, and loss of consortium damages from the Defendants on the following nine claims: (1) negligence and gross negligence against Royal Caribbean; (2) negligent misrepresentation against Royal Caribbean; (3) negligence and gross negligence against the Rain Forest Defendants; (4) vicarious liability on theories of apparent agency or

---

[2]   While the Defendants grouped as the "Rain Forest Defendants" in the Plaintiffs' Complaint contest this designation and its implications, the Court will refer to these Defendants collectively by this designation for ease of reference for purposes of this motion.

agency by estoppel against Royal Caribbean; (5) joint venture against Royal Caribbean and the Rain Forest Defendants; (6) vicarious liability on a theory of actual agency against Royal Caribbean; (7) breach of third-party beneficiary contract against the Rain Forest Defendants; (8) strict liability against Dalton, Pierce, and AP Electrical; and (9) negligence against Dalton, Pierce, and AP Electrical. *See id.* ¶¶ 65-130.

The Defendants filed the instant motion to dismiss on October 24, 2016. Within the motion, EMJO, AP Electrical, Pierce, and Dalton (the "Jurisdiction Defendants") argue that this Court cannot exercise personal jurisdiction over them. On November 28th, the McCulloughs filed a motion urging the Court to either defer ruling on personal jurisdiction pending a merits determination or completion of jurisdictional discovery [ECF No. 135]. After considering the parties' arguments on the issue, the Court granted the McCulloughs sixty days' leave to take jurisdictional discovery of the four Jurisdiction Defendants [ECF No. 189]. Following that discovery, the McCulloughs filed an addendum brief as to personal jurisdiction [ECF No. 236], and the Jurisdiction Defendants replied to that addendum [ECF No. 243]. Imbedded in that reply, the Jurisdiction Defendants move to strike as untimely four affidavits filed by the McCulloughs with their addendum.

## II.    DISCUSSION

### A.    *Personal Jurisdiction*

The Court must first decide whether it can appropriately exercise personal jurisdiction over the Jurisdiction Defendants. "A plaintiff seeking to establish personal jurisdiction over a non-resident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant challenges personal jurisdiction in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), as the Jurisdiction Defendants do here, and submits evidence in support

of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (citation and internal quotation marks omitted). The plaintiff must then "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits," *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A federal court sitting in diversity undertakes a two-step inquiry in ruling on a motion to dismiss for lack of personal jurisdiction. First, it must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute. Second, it must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *United Techs. Corp.*, 556 F.3d at 1274; *see also Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1072-74 (11th Cir. 1999) (applying the same process in a case under admiralty jurisdiction).

Under Florida's long-arm statute, a defendant can be subject to either specific personal jurisdiction (jurisdiction in suits arising out of or relating to the defendant's contacts with Florida) or general personal jurisdiction (jurisdiction over any claims against a defendant, notwithstanding any connection *vel non* with Florida, if the defendant engages in "substantial and not isolated activity" in Florida). Fla. Stat. §§ 48.193(1)(a), (2). The McCulloughs appropriately contend only that this Court should exercise ***general*** personal jurisdiction over the Jurisdiction Defendants. And given that the reach of the general jurisdiction provisions of the Florida long-arm statute is co-

6

extensive with the limits of the Due Process Clause, the Court need only determine whether its exercise of jurisdiction over these Defendants "would exceed constitutional bounds." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)). The Due Process Clause permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### 1.       General Personal Jurisdiction over Corporate Defendants

There are two "paradigm bases" for general jurisdiction over a corporation: its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. —, —, 134 S. Ct. 746, 760 (2014) (citation and alterations omitted). For a corporation to be subject to general personal jurisdiction in any other forum, its affiliations with that forum must be "so 'continuous and systematic' as to render [it] essentially at home" there. *Id.* at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Those affiliations will rise to the requisite level only in "exceptional cases," where the corporation's activities are "so substantial and of such a nature as to render the corporation at home" in that forum. *Id.* at 761 n. 19. In other words, if the corporation does not act in the forum in such a way that the forum is regarded as essentially equivalent to its place of incorporation or principal place of business, general jurisdiction over the corporation would violate due process.

The Supreme Court has identified by name only one such "exceptional case" where general personal jurisdiction in a third, non-paradigmatic forum was proper: *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). There, the defendant was a mining company incorporated under the laws of the Philippines, which ceased its mining operations during the Japanese occupation of the Philippines during World War II. The president of the company moved to Ohio where

he maintained an office and carried on work on behalf of the company. He kept office files there, engaged in company-related correspondence there, drew and distributed salary checks there, used two bank accounts there to carry a substantial amount of company funds, used another bank there as transfer agent for company stock, held directors' meetings there, supervised policies dealing with the rehabilitation of the company's Philippines properties there, and dispatched funds from there to cover purchases of machinery. *Id.* at 447-48. According to the Supreme Court, Ohio's exercise of general jurisdiction over the company in that case was permissible because, based on those contacts, "Ohio was the corporation's principal, if temporary, place of business." *Goodyear*, 564 U.S. at 928 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 n.11 (1984)). Through this example, the Supreme Court has signaled that only a forum that has, for all practical purposes, supplanted a corporation's principal place of business (or state of incorporation) will be an appropriate forum in which the corporation can reasonably be subjected to general personal jurisdiction. *See Daimler*, 134 S. Ct. at 756 n.8 ("Given the [circumstances underlying *Perkins*], Ohio could be considered a wartime surrogate for the place of incorporation or head office." (citation and internal quotation marks omitted)). The Court must decide whether either AP Electrical or EMJO's contacts rise to a similar level.

### a.    *AP Electrical*

AP Electrical is a Vermont limited liability company. Pierce Aff. [ECF No. 125-2] ¶¶ 4-5. While *Daimler* speaks explicitly of corporations in applying its "essentially at home" standard, many courts have favored the application of the standard to non-corporate entities, as well. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("[T]here is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity."); *see also Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017). This Court agrees, which raises the question of whether AP Electrical can be

"fairly regarded as at home" in Florida. *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 924).

The answer is a resounding no. The McCulloughs have proffered no evidence whatsoever to support a claim that AP Electrical is subject to general personal jurisdiction in Florida. In fact, outside of identifying AP Electrical as one of the parties that filed the motion to dismiss and concluding that general jurisdiction should be exercised over it, the McCulloughs mention AP Electrical only three times in their twenty-page jurisdictional brief: once to state that Pierce submitted invoice statements on behalf of AP Electrical to "Rain Forest Adventures" at an address in Miami; once to acknowledge that AP Electrical has claimed Vermont citizenship; and once to request that if AP Electrical's motion is granted, it be severed from the action and the claims against it be transferred to another district court where it would be subject to general jurisdiction. *See* Pls.' Addendum at 2, 7, 20 & n.2. Faced with this paucity of evidence, the Court's discussion need proceed no further. The exercise of general jurisdiction over AP Electrical by this Court would offend due process and is therefore inappropriate.

### b.    *EMJO*

Before the Court can undertake a personal jurisdiction analysis as to EMJO, it must address a threshold issue. In the overarching analytical framework outlined above, the burden to provide evidence to support a claim of personal jurisdiction does not shift back to the plaintiff in the first instance when the defendant's affidavits challenging the plaintiff's jurisdictional allegations "contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton*, 736 F.3d at 1350 (citation and internal quotation marks omitted). It is here that the Court's discussion must begin, as the McCulloughs argue that the Defendants did not submit competent evidence challenging jurisdiction. Specifically, they contest the affidavit of Herschel Alonso Willson, EMJO's clerk of secretarial affairs, submitted with the Defendants' motion to dismiss, as well as Willson's

amended affidavit submitted with their reply. *See generally* Willson Aff. [ECF No. 125-1]; Willson Am. Aff. [ECF No. 143-1]. The McCulloughs argue that Willson's affidavits were insufficient to meet the Defendants' initial burden because the facts contained therein were not based on his personal knowledge, but rather were based on information conveyed to him by EMJO's director, Ramses Owens.[3]

Affidavits submitted in support of or in opposition to a motion to dismiss for lack of personal jurisdiction must "set forth specific factual declarations within the affiant's personal knowledge." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (per curiam). In *Posner*, the plaintiffs (a Florida resident and the Florida-based corporation in which he was a majority shareholder) brought suit against Essex Insurance Company, a Bermuda insurance corporation, and Salem Corporation, the Pennsylvania corporation that owned 65% of Essex, in Florida federal court. Salem filed a motion to dismiss for lack of personal jurisdiction, supported by an affidavit by one of its officers. *Id.* at 1214. Despite the fact that the plaintiffs failed to rebut the officer's affidavit, the Eleventh Circuit took it upon itself to detail the affidavit's many shortcomings:

> The affidavit primarily explains Salem's corporate structure and status; summarily asserts that Salem never has done business in or directed contacts into Florida; admits certain peripheral connections with the state and denies in a conclusory way any other actions that would bring Salem within the ambit of the Florida long-arm statute. For example, paragraph five covers three-quarters of a page and contends, by reciting the long-arm statute essentially verbatim, that the jurisdictional statute does not apply to Salem. Such statements, although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction.

*Id.* at 1215. The court found the affidavit to be "of little significance to the jurisdictional question" and disregarded much of the affidavit's contents in adjudicating the appeal. *Id.*

Willson's affidavits suffer from some of the same infirmities as the affidavit in *Posner*.

---

[3]  It is worth noting that the McCulloughs challenge affidavits that existed ***before*** the Court granted jurisdictional discovery. Now, they essentially argue that the jurisdictional discovery they requested—both in their opposition to the Joint Motion and in a separate, affirmative motion—should never have been granted in the first place (at least as to EMJO).

The affidavits summarily assert that EMJO has never done business in Florida. And most significantly, the overwhelming majority of the affidavits' declarations are little more than a seriatim listing of conclusory denials of actions that arguably may subject EMJO to general personal jurisdiction in Florida. Thus, this Court must similarly disregard the contents of both affidavits in determining whether jurisdiction is proper.[4] That said, one declaration—that the Court *may* appropriately consider—appearing in both affidavits stands out:

> EMJO Investments, Ltd. is a British Virgin Islands company, with its principal place of business located in Morgan & Morgan Building, Pasea Estate, Road Town, Tortola, British Virgin Islands.

Willson Aff. ¶ 3; Willson Am. Aff. ¶ 4. This factual declaration, regarding the location of EMJO's principal place of business, is one that is plausibly within the personal knowledge of EMJO's clerk of secretarial affairs, who was initially designated as EMJO's corporate representative. *And*, more importantly, it directly contradicts the McCulloughs' jurisdictional allegations on this point:

> At all material times, Defendants Rain Forest Adventures (Holdings) Ltd., Elite Shore Excursions Foundation, Rain Forest Sky Rides, Ltd., Rain Forest Tram, Ltd., EMJO Investments Limited . . . and XYZ Corporation were foreign corporations, maintaining their principal places of business in St. Lucia and/or Miami, Florida . . . .

Second Am. Compl. ¶ 4.[5] The Court finds that this declaration in Willsons' affidavits is alone

---

[4]   The parties dispute the consideration of Willson's affidavits, but for the wrong reason. The McCulloughs contend that Willson was not the correct person to proffer the affidavits because he lacked personal knowledge of their contents. The Defendants respond by arguing that Willson was designated as EMJO's corporate representative at the time the affidavits were proffered (he was later swapped out in this role for Owens during jurisdictional discovery), and "[i]t is not necessary" that a person designated as a corporate representative "have direct, personal knowledge of each and every fact discussed in her affidavit or deposition." *Harrington v. RoundPoint Mortg. Servicing Corp.*, No. 15-0322, 2017 WL 1331072, at *3 (M.D. Fla. Apr. 11, 2017) (quoting *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 08-0538, 2010 WL 1930977, at *2 (M.D. Fla. May 13, 2010)). But under *Posner*, whether Willson or Owens submitted these affidavits is irrelevant; what matters is whether the affidavits contain "conclusory assertions of ultimate fact that are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction." 178 F.3d at 1215. Because most of the affidavits' assertions *are* conclusory assertions of ultimate fact, the Court rightly disregards them.

[5]   Upon scrutinizing this particular jurisdictional allegation, the Court could appropriately have found that this allegation was a "vague and conclusory allegation[]" that is "insufficient to establish a prima facie case of jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). The allegation (by including "and/or") ignores the fact that a corporation can have only one *principal* place of business, *see Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010), and it lumps EMJO in with four other companies and a corporate John Doe in vaguely asserting that each

sufficient to swing the burden back to the McCulloughs to prove jurisdiction.

*   *   *

Having disposed of the issues of the affidavits and the shifting burden, the Court now turns to the parties' jurisdictional arguments. EMJO is a British Virgin Islands company with a principal place of business in the British Virgin Islands. Willson Aff. ¶ 3; Willson Am. Aff. ¶ 4. Its sole director, Owens, is domiciled in Panama. EMJO Answers to Jurisdictional Interrogs. [ECF No. 243-1] ¶ 15. Its sole shareholder, Revack Holdings Foundation, is a Panama Private Interest Foundation with a single beneficiary—von der Goltz's mother, Erika von der Goltz—who is a citizen of Guatemala. *Id.* ¶ 16; Erika von der Goltz Aff. [ECF No. 243-4] (filed under seal). EMJO has no office or other physical presence in Florida, it does not conduct or solicit business in Florida, and it does not operate or control any entity or individual in Florida. EMJO Answers to Jurisdictional Interrogs. ¶ 8; Owens Dep. [ECF No. 243-14] at 24:5-14.

In spite of these uncontroverted facts, the McCulloughs, relying almost solely on *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006), and *Meier ex rel. Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002), argue that Defendant von der Goltz's consent to jurisdiction in Florida can be imputed to EMJO because of some agency relationship between them. von der Goltz serves as a financial advisor to EMJO and has made investment recommendations and advice to EMJO as a favor to his mother, the sole beneficiary of EMJO's sole shareholder. von der Goltz Aff. [ECF No. 243-7] ¶¶ 2, 7; von der Goltz Answers to Jurisdictional Interrogs. [ECF No. 243-3] ¶ 1. The McCulloughs proffer the following additional jurisdictional facts:

(1)   EMJO owns 26.7% of RF Holdings (a British Virgin Islands company that has not

---

of those companies' principal place of business is either in Florida (which would confer personal jurisdiction) or in St. Lucia (which would not). Given that jurisdictional discovery has already taken place, however, the Court will presume that the facts borne out in that discovery have cured the existence of an arguably deficient jurisdictional allegation.

challenged personal jurisdiction). Pls.' Addendum Ex. 8 [ECF No. 236-8];

(2)    Boston Capital Ventures (a nonparty company of which von der Goltz is a principal) owns an additional 7.9% of RF Holdings. *Id.*;

(3)    von der Goltz gave suggestions for potential EMJO investments to his financial advisor, Richard Gaffey (a nonparty), who has a residence in Florida and who executed documents and transactions on EMJO's behalf as its vice president and listed a Boston, Massachusetts, address as his contact address. Gaffey would communicate those investment suggestions to Mossack Fonseca (also referred to throughout the record as Mossfon Asset Management and Mossack Fonseca & Co. (BVI) Ltd.), a foreign company that was the manager of EMJO until 2011. *See* Pls.' Addendum Ex. 10 [ECF No. 236-10] at 140-42, 156-57, 231-36; Pls.' Addendum Ex. 13 [ECF No. 236-13]; von der Goltz Dep. II [ECF No. 228-5] at 16; and

(4)    von der Goltz is alleged to have been a "micromanager" of the Rain Forest enterprise. *See* Pls.' Addendum at 15.

In sum, the McCulloughs contend, based on *Stubbs* and *Meier*, that EMJO, a non-resident company, should be subjected to general personal jurisdiction in Florida because von der Goltz, who has consented to this Court's jurisdiction, exercises "authoritative control over the entire Rain Forest business." Pls.' Addendum at 4. This control "imputes his contacts to the Rain Forest subsidiaries, including EMJO."[6] *Id.* In fact, the McCulloughs posit that the consent to jurisdiction by *any or all of* RF Holdings, Rain Forest Sky Rides, Elite Shore, ENT, Canopy, or von der Goltz should bind EMJO, based on the complex ownership structure between the entities and individuals. *Id.* at 11.

This is, as Chief Judge Moore has described it, "a tendentious gloss on precedent" that is

---

[6]    The Court is unable to discern how EMJO can be considered a "Rain Forest subsidiar[y]" by the Plaintiffs, Pls. Addendum at 4, when the evidence shows that EMJO *owns* RF Holdings, a Rain Forest company.

"more than a decade old, easily distinguishable, and do[es] not comport with the cabined conception of general jurisdiction that now exists post-*Daimler*." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1336 (S.D. Fla. 2016). At the outset, *Stubbs* and *Meier* are factually dissimilar from the case *sub judice*. "In those cases, the Eleventh Circuit held that a Florida subsidiary acting merely as an agent of a non-resident parent company can subject the non-resident parent company to the Court's jurisdiction based on the subsidiary's contacts with Florida." *Lapidus v. NCL Am., LLC*, No. 12-21183, 2013 WL 646185, at *5 (S.D. Fla. Feb. 14, 2013). By contrast, the Plaintiffs seek, via a very tangled web, to subject a non-resident subsidiary (EMJO) of a non-resident parent (Revack Holdings) to general jurisdiction in Florida based on the non-resident subsidiary's (EMJO's) ownership of a substantial portion of another non-resident company (RF Holdings) that happens to have consented to jurisdiction here and based on the fact that that company (RF Holdings) is "controlled" by an individual (von der Goltz) who also has consented to jurisdiction here.

Notwithstanding the factual distinction, the McCulloughs face a broader problem. *Daimler* rejected the Ninth Circuit's agency theory of jurisdiction, finding that it "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' . . . rejected in *Goodyear*." 134 S. Ct. at 760 (quoting *Goodyear*, 564 U.S. at 929). Since *Daimler*, several courts in this District have strongly suggested that that rejection has abrogated the agency theory advanced by *Meier* and its progeny.[7] *See Thompson*, 174 F. Supp. 3d at 1336 ("[R]eliance on [*Stubbs* and *Meier*] to establish general jurisdiction on an agency theory is dubious given the decisions in *Daimler* and *Goodyear*."); *Schulman v. Global Citizens Travel, LLC*, No. 13-23766, 2015 WL 11018438, at *4 (S.D. Fla. Jan. 20, 2015) ("The approach to agency the Eleventh Circuit applied

---

[7]   To the extent the McCulloughs believe that the Supreme Court in *Daimler* "merely disagree[d] with the Ninth Circuit['s] theory on agency," Pls. Addendum at 10, that belief is ill-founded. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) ("*Daimler* **invalidated** our previous 'agency' test . . . ." (emphasis added)).

in a jurisdictional analysis in *Meier* and *Stubbs* is now in doubt in light of *Daimler*, in which the Supreme Court expressed skepticism of any agency test that did not require a showing that the agent in the forum state was 'so dominated by the [parent] as to be its alter ego.'" (quoting *Daimler*, 134 S. Ct. at 759)); *see also Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1391 (S.D. Fla. 2014).

Despite this clearly expressed doubt of the continued vitality of *Stubbs* and *Meier*, the McCulloughs, relying on a single unpublished district court decision, argue that *Daimler* **has not** altered the status of those cases' general-jurisdiction-by-agency theory. In that one case, *Barriere v. Cap Juluca*, No. 12-23510, 2014 WL 652831, at *9 (S.D. Fla. Feb. 19, 2014), the court, in electing to apply *Meier* and *Stubbs*, concluded that *Daimler* could not have disturbed those prior decisions because "[d]oing so would effectively deprive American citizens from litigating in the United States for virtually all injuries that occur at foreign resorts maintained by foreign defendants even where . . . the corporations themselves maintain an American sales office in Florida and heavily market in the jurisdiction."**[8]** But there can be no question that *Daimler* is the law of the land when it comes to general personal jurisdiction. Neither the perceived unfairness of nor the practical difficulties arising from a particular Supreme Court decision provides a party (or a court) with grounds to disregard or circumvent that decision's holding. Thus, this Court disagrees with the ruling in *Barriere*, as it is inconsistent with *Daimler*.**[9]**

---

[8]   This conclusion tracks Justice Sotomayor's concurring opinion in *Daimler*, in which she, citing *Meier*, lamented that under the majority's decision, "a parent whose child is maimed due to the negligence of a foreign hotel owned by a multinational conglomerate will be unable to hold the hotel to account in a single U.S. court, even if the hotel company has a massive presence in multiple States." *Daimler*, 134 S. Ct. at 773 (Sotomayor, J., concurring in the judgment).

[9]   Even if whatever theoretically remained of any agency theory in this Circuit ***did*** apply here, the McCulloughs fail to satisfy it. The Ninth Circuit, for example, has adjusted its analysis post-*Daimler* to require that a plaintiff show that a non-resident entity "is not really separate from its domestic affiliate":

   [A] parent-subsidiary relationship does not on its own establish two entities as "alter egos," and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other. Rather, . . . [t]o satisfy this [alter ego] test, "a plaintiff must make out a prima facie case (1) that there is such unity of

Without the agency theory, the McCulloughs have provided no evidence or authority to support a finding that EMJO—a British Virgin Islands company with no Florida presence, contacts, or business, save a tangential, amalgamated relationship with a number of co-defendants that have not challenged jurisdiction—is "essentially at home" in Florida. Accordingly, the Court concludes that it cannot exercise general personal jurisdiction over EMJO.[10]

## 2.    Personal Jurisdiction over Individual Defendants

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Daimler*, 134 S. Ct. at 760. Beyond that, the Supreme Court has provided two other instances in which the exercise of general jurisdiction over an individual is proper: where the individual consents to the forum's jurisdiction, and where the individual is present within the forum when served with process. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality opinion); *see also id.* at 881 ("By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter."). Federal courts throughout the United States have held, respecting *J. McIntyre Machinery*, that general jurisdiction over any individual comports with due process *only* in these three scenarios. *See, e.g.*, *Williams v. Romarm, SA*, 756 F.3d 777, 783 (D.C. Cir. 2014); *Lebron v. Encarnacion*, — F. Supp. 3d —, —, 2017 WL 2352856, at *4 (E.D.N.Y. May 31, 2017); *Greystone Hous. Found., Inc.*

---

interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice.'"

*Williams*, 851 F.3d at 1021 (citations omitted) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070, 1073 (9th Cir. 2015)). There is no evidence in the record to support a theory that EMJO and von der Goltz are so united that EMJO practically ceases to exist. Put simply, the McCulloughs have not established that von der Goltz "so dominates" EMJO "as to be its alter ego" or that EMJO "so dominates" any Florida company "as to be *its* alter ego." *Daimler*, 134 S. Ct. at 759 (emphasis added). von der Goltz's investment recommendations and other involvement in the management of any Rain Forest entities do not suffice. For that matter, neither does a wholly unsupported blanket statement that "if a sufficient agency relationship exists between any of" RF Holdings, Rain Forest Sky Rides, RF Tram, Elite Shore, ENT, Canopy, or von der Goltz and EMJO, "then EMJO has sufficient minimal contacts to Florida pursuant to Florida's Long Arm Statute, *Meier*, *Stubbs*, and *Barriere*." Pls.' Addendum at 11. The McCulloughs neither define nor discuss what constitutes their version of a "sufficient agency relationship," nor how their definition of such a term comports with the strictures of *Daimler*.

[10]   The Court need not address EMJO's argument that service upon it was not properly effected.

16

*v. Fantasy Holdings, LLC*, No. 16-0300, 2017 WL 2123620, at *2 (S.D. Cal. May 16, 2017); *Brown v. Twentieth Century Fox Home Entm't*, No. 14-0147, 2015 WL 5021125, at *5 (E.D. Ky. Aug. 27, 2015); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 434 (E.D. Pa. 2015); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 813, 819 (E.D. Tex. 2014); *Filtrexx Int'l, LLC v. Truelsen*, No. 12-0058, 2013 WL 587582, at *8 (N.D. Ohio Feb. 13, 2013); *Woodmen of the World Life Ins. Soc'y v. U.S. Bank Nat'l Ass'n*, No. 09-0407, 2011 WL 5075615, at *2 (D. Neb. Oct. 25, 2011). *But see Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (suggesting that *Daimler*'s discussion raising the possibility that in an "exceptional case" a corporation may be found to be "essentially at home" in a state other than its state of incorporation or principal place of business may theoretically be applied to individuals).

Neither Pierce nor Dalton is domiciled in Florida, neither was served in Florida, and neither has consented to jurisdiction in Florida. Pierce is a domiciliary of Vermont. *See* Pierce Answers to Jurisdictional Interrogs. [ECF No. 243-20] ¶ 1. Dalton is a domiciliary of Colorado who presently resides on a boat in the Caribbean Sea, as he works as an independent contractor for various foreign Rain Forest Adventure–brand parks throughout the Caribbean. *See* Dalton Aff. [ECF No. 243-8] at 2; Dalton Answers to Jurisdictional Interrogs. [ECF No. 243-9] ¶ 3. Were the Court to rely on *J. McIntyre Machinery* alone, this factual showing would close the question.

And even if the Court were to assume that the *Daimler* "essentially at home" standard applies to individuals, neither Defendant's contacts rises to the requisite level. Regarding Pierce, the McCulloughs allege that he communicated with Rain Forest's Miami office and submitted invoices to "Rain Forest Adventures" at Rain Forest's Miami address. Pls.' Addendum at 17. Regarding Dalton, the McCulloughs allege that he was an employee of Rain Forest, received pay-stubs from Rain Forest's Miami office, received a cell phone from Rain Forest's Miami office with a 305 area code, proffered himself as Rain Forest's chief engineer in newspaper articles, used

Rain Forest letterhead for sending personal and professional mail, and forwarded his personal and professional mail to Rain Forest's Miami office. *See id.* at 16-17.

None of these attenuated contacts make Florida the equivalent to either Dalton or Pierce's domicile—the sole paradigmatic place of general jurisdiction for an individual. "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002) (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)). Pierce has virtually no connection with Florida. And Dalton? Most of his purported connections arise from the fact that his employer has an office located in Florida, despite the fact that he works and lives nomadically throughout the Caribbean. That Dalton has a certain number of contacts in Florida by virtue of his employment is immaterial. By the McCulloughs' standard, any of the hundreds of thousands of individuals who live in New Jersey or Connecticut and work in New York City, for example, would be subject to general personal jurisdiction in both their home state and in New York simply because of the location of their employer. Though a defendant's "principal place of business" may suffice for general jurisdiction over a corporation, it does not for an individual.

The Court will also not extend jurisdiction over Dalton based on his use of a Florida address for mail forwarding purposes. Dalton testified in deposition that he occasionally "pass[es] through Miami going from island to island" and uses the Rain Forest Miami office as a mail-forwarding address "as a matter of convenience." Dalton Dep. [ECF No. 236-18] at 74:18-79:9. This use of a mail-forwarding facility for purposes of convenience will not operate to confer general jurisdiction over Dalton in Florida. *See Wolf v. Celebrity Cruises, Inc.*, — F. App'x —, —, 2017 WL 1149092, at *3 (11th Cir. Mar. 28, 2017) (per curiam) (finding no general jurisdiction based on a defendant's use of the address of a Florida mail-forwarding facility "because of the unreliable mail system in

Costa Rica").

Based on the above, the Court concludes that it cannot exercise general personal jurisdiction over Pierce or Dalton.

### 3.    Federal Rule of Civil Procedure 4(k)(2)

The Court rejects the McCulloughs alternative argument that the Court can exercise jurisdiction over any of the Jurisdiction Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2)—the so-called "national long-arm statute." Where a defendant "is not subject to the jurisdiction of the courts of general jurisdiction of any one state, Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law'; and (2) the exercise of jurisdiction must be 'consistent with the Constitution and laws of the United States.'" *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting Fed. R. Civ. P. 4(k)(2)).

Any attempt to apply this rule against AP Electrical, Pierce, and Dalton does not survive past the preamble; each of these Defendants is subject to general jurisdiction in a state (Vermont for AP Electrical and Pierce, Colorado for Dalton). Regarding EMJO, "[i]n the wake of . . . *Daimler*, it appears unlikely that general jurisdiction over a foreign defendant could ever be available under 4(k)(2)." *Thompson*, 174 F. Supp. 3d at 1338 n.9. Assuming *arguendo* that the McCulloughs' claims against EMJO arise under federal maritime law (which the Court has yet to decide), and looking, as the Court must, at the United States *as a whole* as the applicable forum for the minimum contacts analysis, *see Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009), the Court finds that exercise of jurisdiction over EMJO would still offend due process. Allegations of a few additional individuals making a few additional EMJO-related transactions in scattered states other than Florida does not transform this case into one of the "exceptional" cases in which a foreign company could be considered "essentially at home" in the United States. *Daimler*,

134 S. Ct. at 761 n.19.

### 4.      Possibility of Severance and Transfer Under 28 U.S.C. § 1631

In the event the Court concluded it could not exercise jurisdiction over the Jurisdiction Defendants the McCulloughs request that the Court—instead of dismissing the claims against Dalton, Pierce, and AP Electrical—sever the claims against these Defendants and transfer the severed actions "to the District Courts where [they] are subject to general personal jurisdiction." Pls.' Addendum at 20 n.2. While it is true that, if a district court lacks jurisdiction over an action, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed," 28 U.S.C. § 1631, there currently exists a circuit split regarding whether a court may transfer less than a full action under this statute. *Compare Hill v. U.S. Air Force*, 795 F.2d 1067, 1070-71 (D.C. Cir. 1986) ("[W]hen a federal court finds that it lacks jurisdiction but that another federal court has authority to hear the case, 'the first federal court must transfer **the case** to the proper court.'" (emphasis added) (quoting *Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Regulatory Comm'n*, 781 F.2d 935, 943 (D.C. Cir. 1986) (Ginsburg, J., dissenting))), *with D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) ("[W]e have interpreted section 1631 to permit the transfer of all or only part of an action."), *United States v. County of Cook*, 170 F.3d 1084, 1088 (Fed. Cir. 1999) (same), *and FDIC v. McGlamery*, 74 F.3d 218 (10th Cir. 1996) (same). In the absence of a ruling by the Eleventh Circuit on this issue, this Court joins the weight of authority in deciding that individual claims against individual defendants may theoretically be transferred to a new venue under Section 1631.

Transfer of these claims is not as straightforward a process as the McCulloughs make it seem, however. "When transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21 before effectuating the transfer." *Chrysler Credit*

*Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991). Courts have "considerable discretion" to sever a claim from an action pursuant to Rule 21. *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010). Prior to severing, "the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *D'Jamoos*, 566 F.3d at 111.[11] Furthermore,

> the court must weigh carefully whether the inconvenience of splitting the suit outweighs the advantages to be gained from the partial transfer. It should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places.

*Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by Trivelloni-Lorenzi v. Pan Am. World Airways, Inc.* (*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*), 821 F.2d 1147 (5th Cir. 1987), *vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989); *see also Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33-34 (3d Cir. 1993).

If this Court were to sever and transfer the strict liability and negligence claims against Pierce and AP Electrical to Vermont and the strict liability and negligence claims against Dalton to Colorado, the other eight claims against Royal Caribbean and the Rain Forest Defendants would remain here. But because all of the McCulloughs' claims against all of the Defendants arise from the single zip-line incident, transferring the claims against Dalton, Pierce, and AP Electrical while simultaneously retaining the claims against Royal Caribbean and the Rain Forest Defendants would

---

[11]   The statement "the factors favoring transfer" is a reference to the factors considered in a venue transfer analysis under 28 U.S.C. § 1404(a). *See White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144-45 (3d Cir. 1999), *cited in D'Jamoos*, 566 F.3d at 111. These factors include: (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

result in the same facts and issues being litigated in *three* different judicial districts. "Such duplicitous litigation is not in the interest of justice." *Kennedy v. Phillips*, No. 11-1231, 2012 WL 261612, at *4 (W.D. Wash. Jan. 23, 2012). Upon consideration, the Court finds that the relevant factors weigh against severance and transfer. Dismissal of these Defendants is the only appropriate course of action.

*   *   *

The motion to dismiss all claims against EMJO, AP Electrical, Pierce, and Dalton for lack of personal jurisdiction is granted.[12]

## B.    *Sufficiency of Claims*

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

---

[12]   Because the Court ruled on the motion to dismiss for lack of personal jurisdiction without needing to consult or rely on the McCulloughs' allegedly untimely jurisdictional affidavits, the Defendants' motion to strike these affidavits is denied as moot.

The Court has reviewed the Defendants' other arguments and the allegations in the Second Amended Complaint and finds that the McCulloughs have plausibly alleged their claims sufficient to withstand a motion to dismiss. The Court will resolve any outstanding issues at the summary judgment stage, after the Court has made the determination as to which jurisdiction's substantive law will apply to the various claims in this case.

## III.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' Joint Motion to Dismiss Second Amended Complaint [ECF No. 125] is **GRANTED IN PART**. All claims against Defendants EMJO Investments Ltd.; AP Electrical Service, LLC; John Dalton; and Andrew Pierce in the Second Amended Complaint [ECF No. 71] are **DISMISSED WITHOUT PREJUDICE**.

The motion is otherwise **DENIED**. The remaining Defendants shall **ANSWER** the Second Amended Complaint by **August 4, 2017**.

**IT IS FURTHER ORDERED** that Defendants EMJO, AP Electrical, Pierce, and Dalton's Motion to Strike Supporting Affidavits [ECF No. 243] is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of July, 2017.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE