UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-20194-GAYLES

LYNN McCULLOUGH and
WILLIAM McCULLOUGH,
        Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES, LTD., et al.,
        Defendants,
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant's, AIG Insurance Hong Kong Limited ("AIG"), Motion to Compel Arbitration and Dismiss Plaintiffs' Third Amended Complaint (the "Motion") [ECF No. 467]. The Court has carefully considered the Motion, the record, and is otherwise fully advised. For the following reasons, the Motion is **DENIED**.

### BACKGROUND

This case involves a tragic accident that occurred during a shore excursion.[1] Plaintiffs William and Lynn McCullough ("the McCulloughs") were traveling on a Royal Caribbean cruise ship, which stopped at St. Lucia. During the stop, the McCulloughs participated in an "Adrena-Line" zip line course. During a rappelling portion of the course, Mrs. McCullough was not properly secured to the harness and, as a result, she fell nearly fifty feet from the platform to the ground below. She sustained severe injuries and was rendered a quadriplegic.

---

[1] This case has been intensely litigated for three years, and the Court will recount only the portions relevant to the instant proceedings. For clarity's sake, the Court adopts and incorporates the recitation of facts in its prior Order on Defendants' Joint Motion to Dismiss Second Amended Complaint [ECF No. 301].

The McCulloughs sued numerous parties including Royal Caribbean, various insurance companies, and the excursion operators: Rain Forest Adventures (Holdings), Ltd.; Rain Forest Sky Rides, Ltd.; Rain Forest Tram, Ltd.; and Harald Joachim von der Goltz (collectively "the Rain Forest Defendants"). Following the denial of their summary judgment motions, the Rain Forest Defendants went to mediation with the McCulloughs and then to binding arbitration. The arbitrator entered an award in favor of the McCulloughs. [ECF No. 433-1]. The Court subsequently entered Final Judgment in their favor and against the Rain Forest Defendants jointly and severally. [ECF No. 436].

At the time of the incident, Harald Joachim von der Goltz was covered by an insurance policy (the "Policy") issued by AIG, a Hong Kong corporation. The Policy contained a Disputes Clause, which stated:

> **8.9 Disputes**
>
> Except as otherwise specifically provided, any dispute regarding any aspect of this policy or any matter relating to cover thereunder which cannot be resolved by agreement within six (6) months, shall first be referred to mediation at Hong Kong International Arbitration Centre (HKIAC) and in accordance with its Mediation Rules.
>
> If the mediation is abandoned by the mediator or is otherwise concluded without the dispute or difference being resolved, then such dispute or difference shall be referred to and determined by arbitration at HKIAC and in accordance with its Domestic Arbitration Rules.
>
> [ . . . ]

The Policy carried liability coverage of up to $5,150,000.00. Other provisions of the Policy limit AIG's liability for "Bodily Injury and Property Damage." Because of the exclusion provisions, AIG consistently disputed coverage under the Policy. *E.g.*, [ECF No. 467]. AIG offered to fund a settlement for $350,000 based on its evaluation of von der Goltz's exposure. But at no point did the McCulloughs seek verification of coverage through litigation.

2

In their Third Amended Complaint [ECF No. 444], the McCulloughs allege that AIG acted in bad faith by failing to settle the McCullough's claims against the Rain Forest Defendants within the Policy's limits. AIG then filed the instant Motion, which is now ripe for review.

## DISCUSSION

AIG argues that the McCulloughs' third party bad faith insurance claim should be dismissed and sent to arbitration in accordance with the Disputes Clause of the Policy because coverage under the Policy has not been determined. The McCulloughs counter that they are not subject to the Policy's arbitration clause because (1) their action is for common law bad faith, a Florida cause of action separate and apart from the underlying insurance action, and (2) they were not signatories to the Policy.

### I.  Common Law Bad Faith Claim

"In Florida, a bad faith action against an insurance company may be brought not only by the insured to whom the duty of good faith was owed or his or her formal assignee, but also by a third party whose claim against the insurance policy was the subject of alleged bad faith." *Progressive Express Ins. Co. v. Scoma*, 975 So. 2d 461, 465 (Fla. 2d DCA 2007). A bad faith claim may be brought by a third party absent an assignment from the insured. *See id.* The first issue presented is whether a third party can bring a bad faith claim against an insurer before coverage has been determined.

Florida courts limit third party bad faith actions against an insurer to cases where coverage has been determined. *Blanchard v. State Farm*, 575 So. 2d 1289, 1291 (Fla. 1991) (holding that an insurer cannot be held liable for bad faith conduct unless it is first established that the insured was entitled to benefits under the policy). A coverage determination is necessary because a bad faith failure to settle claim is "founded upon the obligation of the insurer to pay when all conditions

3

under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay." *See Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000). An injured third party must therefore first obtain "'a resolution of some kind in favor of the insured' on the coverage issue" before pursuing his bad faith claim against the insurer. *E.g.*, *Levesque v. Gov't Emps. Ins. Co.*, No. 15-14005-CIV, 2015 WL 6155897, at *4 (S.D. Fla. Oct. 20, 2015) (citing *Brookins v. Goodson*, 640 So. 2d 110, 113 (Fla. 4th DCA 1994), *disapproved of in part on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62 (Fla. 1995); *Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 07-60003-CIV, 2007 WL 1424596, at *5 (S.D. Fla. Sept. 24, 2009) (noting that claims for statutory bad faith "cannot proceed until the underlying coverage dispute has been resolved") (citing *Blanchard*, 575 So. 2d at 1291). Where coverage is undetermined, a claim for bad faith is premature. *Blanchard*, 575 So. 2d at 1291.

Here, AIG contests coverage under the Policy because it excludes payment for bodily injury. Moreover, there is no underlying determination of coverage—only a Final Judgment against the Rain Forest Defendants on the issue of their liability. Because a threshold issue in this case is whether there is coverage under the Policy, the McCulloughs' bad faith claim is premature.

## II.     Jurisdiction under the Convention

AIG seeks to compel the McCulloughs to arbitration, pursuant to the Policy's Disputes Clause, for a determination of coverage. AIG reasons that, since the McCulloughs stand in the shoes of von der Goltz for purposes of their bad faith insurance claim, they should also be subject to the Policy's terms. The McCulloughs counter that they are not signatories to the arbitration agreement or assignees of the policy. The second issue presented is whether a signatory to an arbitration agreement can compel a nonsignatory to arbitration under the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–08 (the "Convention").

It is undisputed that the McCulloughs did not sign the arbitration agreement. At the hearing on April 29, 2019, AIG also conceded that there is no written assignment delegating von der Goltz's rights under the insurance policy to the McCulloughs. [ECF No. 501]. AIG attempts to circumvent these facts by relying on two equitable arguments. First, AIG argues that the McCulloughs stand in the shoes of von der Goltz, the insured, because their action seeks to vitiate his rights under the Policy. *See Kong v. Allied Professional Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014) (noting that, in Florida, "a number of cases have found that [] nonsignatories may be compelled to arbitrate . . . if the nonsignatory has received something more than an incidental or consequential benefit of the contract") (citing *Germann v. Age Inst. of Fla., Inc.*, 912 So. 2d 590, 592 (Fla. 2d DCA 2005)). Second, AIG argues that a third party bad faith action like the one brought by the McCulloughs requires that a plaintiff "stand in the shoes of the insured for purposes of standing to bring [the claim]." *Scoma*, 975 So. 2d at 465.

The Convention requires that contracting states, including the United States and Hong Kong, recognize and enforce foreign arbitral agreements. *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016). The Convention "generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998). It creates two causes of action in federal court for a party seeking to enforce an arbitration agreement that falls under the Convention: a motion to *compel* arbitration "in accordance with the agreement," 9 U.S.C. § 206; and a motion to "*confirm*" an arbitral award, *id.* § 207 (emphasis added). The Court's inquiry on a motion to compel arbitration under the Convention is limited to determining whether the

arbitration agreement at issue meets those causes. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

The Court must grant a motion to compel arbitration so long as four jurisdictional prerequisites are met, the first of which is at issue here: whether "there is an agreement in writing within the meaning of the Convention." *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1325 (11th Cir. 2018) (citing *Bautista*, 396 F.3d at 1294 n.7). "Parties have an 'agreement in writing' under the Convention if there is 'an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.'" *Quiroz v. MSC Mediterranean Shipping Co. S.A.*, 522 F. App'x 655, 661 (11th Cir. 2013) (citing Convention, Art. II(2)); *Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F. Supp. 2d 1248, 1256 (S.D. Fla. 2009) (granting motion to compel where agreement set forth the terms of the arbitration and contained the signatures of the relevant parties). Before compelling arbitration pursuant to the Convention, courts typically require that the parties be signatories to the arbitration agreement, which protects the interests of parties who have not knowingly agreed to arbitrate. *See Outokumpu*, 902 F.3d at 1326; *Stanfield v. Fly Low, Inc.*, No. 15-20224-CIV, 2015 WL 4647902, at *2 (S.D. Fla. Aug. 5, 2015) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).

The Eleventh Circuit has unequivocally determined that non-signatories cannot be bound to arbitration agreements under the Convention under theories of estoppel or third party beneficiary. In *Outokumpu*, a signatory to an arbitration agreement sought to bind a non-signatory to that agreement. 902 F.3d at 1326. Although the contract containing the arbitration agreement specifically defined the non-signatory's role as a third party subcontractor, the non-signatory did

6

not sign or otherwise bind itself to any of the terms of the contract. *Id.* Accordingly, the Eleventh Circuit held that the contract—including the arbitration clause—bound only the signatories. *Id.* ("Private parties . . . cannot contract around the Convention's requirement that the parties *actually sign* an agreement to arbitrate their disputes in order to compel arbitration."). The Court distinguished the requirements of the Convention from those of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), which permits a non-signatory to be compelled to arbitration based on equitable considerations: "Although parties can compel arbitration through estoppel under Chapter 1 of the FAA, estoppel is only available under Chapter 1 because Chapter 1 does not expressly restrict arbitration to the specific parties to an agreement. But the Convention imposes precisely such a restriction." *Id.* at 1326–27 (internal quotations and citations omitted). This explicit language severely restricts any attempt to bind a non-signatory through theories of equity.

AIG offers no Eleventh Circuit precedent to counter *Outokumpu*, which plainly rejected using arbitration by estoppel and other equitable theories to bind non-signatories to arbitration in cases arising under the Convention. Thus, because there is no agreement signed by both parties, the McCulloughs cannot be compelled to arbitrate.

\*   \*   \*

A final matter is whether the Court must stay or dismiss this action pending resolution of the coverage issue. Because the McCulloughs' bad faith claim is premature until coverage under the Policy has been established, this case shall be stayed.

7

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' Motion to Compel Arbitration and Dismiss Plaintiffs' Third-Amended Complaint [ECF No. 467]. is **DENIED**. This case shall be **STAYED** and **ADMINISTRATIVELY CLOSED** until coverage under the Policy has been established. Either party may move to reopen when warranted. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of May, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE